[PHILADELPHIA, FEBRUARY 11TH, 1839.]

## The PHILADELPHIA, GERMANTOWN AND NORRISTOWN RAIL ROAD CO. *against* WILT.

### IN ERROR.

Trespass vi et armis will not lie against a rail-road corporation, for an injury done to the plaintiff by their locomotive steam-engine, whether such injury be wilful or accidental on the part of the servants of the company, where it does not appear that the particular injury was done by the command or with the assent of the defendants.

On a writ of error to the Court of Common Pleas of Delaware County, it appeared, that Michael Wilt brought an action of trespass *vi et armis*, in the Court of Common Pleas of Montgomery County, against The Philadelphia, Germantown and Norristown Rail Road Company, in which the plaintiff declared that the defendants, " on the first day of February, A. D. 1836, at the county aforesaid, with force and arms, &c., with their locomotive steam-engine, in and upon the wagon and horses of the said Michael did run, and the wagon and horses and the marketing and merchandize in the said wagon laden, together, of the value of $250, did break, kill, injure and destroy, and the person of the said Michael then and there did wound and injure, and other wrongs," &c.

The defendants pleaded not guilty, and justification, upon which issues were joined ; and on the 19th of May, 1837, on the application of the defendants, and in pursuance of the act of assembly, passed on the 14th of April, 1834, the cause was removed to the Court of Common Pleas of Delaware County, where it came on for trial before DARLINGTON, (President,) on the 6th of June, 1838.

The material facts, as they appeared on the trial, were as follows :—

On the 2d of January, 1836, as the train of cars was proceeding from the city of Philadelphia to Manayunk, at the place where the rail-road crosses the Ridge Turnpike near Robinson's bridge, the

locomotive struck the plaintiff's wagon, upset it, tore off one of the wheels, the horses broke loose, threw the plaintiff out on his face; and one of them was considerably injured, and died some time in February following, returning in a wagon from the city of Philadelphia, whether from the effects of the injury did not appear: he suddenly fell down dead on the road. He was a blind horse, valued by some of the witnesses at thirty or thirty-five dollars. At the time the train approached the turnpike, the plaintiff was crossing the rail-road with his wagon, and the engine struck it a little in front of the hub of the hind wheel. There was no dispute about the wagon having been struck by the locomotive, though the witnesses differed in opinion as to the practicability of seeing the wagon on the turnpike from the cars as it approached; some thought it might be seen by the person on the engine; others thought not until the train came within a short distance of the turnpike. There was a ridge or bank between the rail-road and turnpike which intercepted the view from one to the other. It was admitted that the engineer was in the employment of the company, that the cars and locomotive belonged to them, and were under the care and management of the engineer, on the day and at the time the accident occurred. There was some difference of opinion among the witnesses as to the speed of the engine when it struck the wagon.

The witnesses on the part of the defendants deposed, that when the train arrived at Robinson's bridge, about two hundred yards from the crossing, the bell of the engine was rung, as was usual, to give persons travelling on the turnpike notice that the train was approaching the crossing. The steam was shut off the engine on account of the road being down grade. When the engine approached within about fifty yards of the turnpike, the wagon was seen going fast up to the crossing, and a witness stated that he was whipping his horses to get over ahead of the engine. The moment the engineer saw the wagon, he directed the breaks to be applied, reversed the engine, and let off the steam. The breaks were instantly applied to the cars and the tender. The engineer stated that he did every thing that could be done to avoid coming in collision with the wagon, that it was impossible for him to see it before he directed the breaks to be applied; and that persons on the turnpike can see a much greater distance on the rail-road when approaching it, than those on the rail-road can see on the turnpike. The speed of the engine at the time did not exceed eight or ten miles an hour. The collision was unavoidable. Such was the testimony of the conductor of the cars, engineer, firemen, and a witness who happened accidentally to be on the road at the time. The bell was rung agreeably to the instructions of the company, which directed that it should be rung at one hundred yards from the crossing.

(Philadelphia, Germantown and Norristown R. R. Co. *v.* Wilt.)

Upon this evidence the defendant's counsel requested the Court to charge the jury—

"1. That the plaintiff cannot recover in the present form of action upon the evidence in this case.

2. The defendants are not responsible for the act of their agent, unless he were guilty of negligence or unskilfulness in the management of his engine, by reason whereof the injury ensued.

3. The defendants are not liable, if the jury shall be of opinion that the injury was the result of an unavoidable accident."

The learned judge, however, charged in substance that—

"1. A corporation may by their servants, agents, or engineers, (and indeed in no other way,) commit a trespass, and an action of trespass will lie against them for forcible injuries against the lands, goods or person of another; and the evidence in this case, if accredited by the jury, is sufficient to sustain the action of trespass, *vi et armis.*

.2d. and 3d. The action being properly for a trespass, *vi et armis*, the defendants are liable for damages arising from the immediate act of violence, whether it be the breaking of a wagon, injury to the horse, injury to the lading, or injury to the person of the plaintiff; and this, whether the injury were committed wilfully or accidentally. It is the duty of the defendants so to use their own rights or property, as not to injure others; and unless the plaintiff wantonly placed or continued himself or his property, in the way of destruction, he is entitled to damages, to be assessed by the jury, for the injury done to it, whether it be wilfully, carelessly or accidentally."

The jury found for the plaintiff; and the defendants having removed the record to this Court, filed the following specification of errors:

"1. The Court below erred in charging the jury on the first point submitted to them.

2. In refusing to charge the jury that the law was as stated in the defendants' second point, and in charging that they were liable whether the injury were committed wilfully or accidentally.

3. In refusing to charge the law as stated in the third point submitted to them.

4. The Court erred in charging the jury, 'that unless the plaintiff wantonly placed or continued himself, or his property in the way of destruction, he was entitled to damages for the injury done to it, and that whether it was done wilfully, carelessly or accidentally.'"

Mr. *Miles* for the plaintiffs.

The Philadelphia, Germantown, and Norristown Rail Road Company was incorporated by an act of assembly passed in 1831, which authorised them to construct the road, and to make use of locomotive steam-engines for the purpose of transporting passengers and merchandise. The evidence proved that the injury was entirely accidental, on the part of the conductor and engineer, and that every proper precaution was taken.

1. It is well settled that trespass will not lie against a master for an injury done by his servant, unless where he is present and gives express directions. *Morley* v. *Gainsford* (2 *Hen. Blackst.* 44.) *Day* v. *Edwards*, (5 *Term Rep.* 648.) *Savignac* v. *Roome*, (6 *Term Rep.* 125.) *Jones* v. *Hart*, (*Salk.* 441.) 2 *Dane's Abr.* 494.

2. Where the principal is liable for the conduct of the agent it can only be by action on the case. *Soane* v. *Bray*, (5 *Esp. Cas.* 18.) *Hull* v. *Pritchard*, (3 *Camp.* 187.) *Rogers* v. *Ingleby*, (5 *Bos. & Pull.* 117.) *Barnes* v. *Hurd*, (11 *Mass. Rep.* 57.) *Vail* v. *Lewis*, (4 *John. Rep.* 450.) *Craft* v. *Wilson*, (4 *Barn. & Ald.* 592.) *M^cMahon* v. *Pritchett*, (1 *East*, 106.) *Taylor* v. *Rainbow*, (1 *Mass. Rep.* 145.) *Ogle* v. *Barnes*, (8 *Term Rep.* 192.) *Tripe* v. *Potter*, (6 *Term Rep.* 128.) 2 *Dane's Abr.* 195.

3. It was a good defence to show that the injury was the result of an unavoidable accident, happening in the course of a lawful business. The evidence was, that the company had caused notices to be placed on each side of the road cautioning travellers to look out for the engine, and had given direction to their engineer to ring their bell on approaching the cross road, which was proved to have been done in this case. The direction of the learned judge on this point was not sustained by the authorities. *Beckwith* v. *Shoreditch*, (4 *Burr.* 2092.) *Bussy* v. *Donaldson*, (4 *Dall.* 206.)

Mr. *Tilghman, contra.*

The question below was not one of wilfulness on the part of the engineer, but of gross carelessness. The plaintiff did not charge the directors with having ordered their servants to do the particular injury. If a corporation give general orders to do a certain thing in a particular way, and an injury happens immediately from it, trespass will lie against the corporation, as well as against any other master. Although the injury be accidental, yet if it be immediate, trespass lies. It is certainly not necessary to cite any authority to show that trespass *vi et armis* will lie against a corporation. [CURIA.—Certainly not; but what you have to show is, that there is a difference between corporations and other masters in respect to liability for the acts of their servants.] The leading case on the subject of liability in trespass is *Soane* v. *Bray* (3 *East*, 593,) where the action was held to lie. So in *Percival* v. *Hickey*, (18 *Johns.* 257.)

(Philadelphia, Germantown and Norristown R. R. Co. v. Wilt.)

Mr. *Edwards*, who was to reply, was stopped by the Court.

The opinion of the Court was delivered by

ROGERS, J.—If an injury be done by the act of the party at the time, or he be the immediate cause of the injury, though it happen accidentally, or by misfortune, he is answerable in trespass. The distinction in this *form* of suit, has not turned either on the lawfulness of the act, from whence the injury happened, or on the design of the party doing it, to commit the injury; but on the difference between injuries direct and immediate, or mediate and consequential: in the one instance the remedy is by case; in the other, by trespass. *Scott* v. *Shephard*, (2 *Hen. Blackst.* 895.) *Reynolds* v. *Clarke*, (2 *Lord Ray*. 1402.) *Leame* v. *Bray*, (3 *East*, 598.) Where the injury is done by the master himself, trespass will lie, whether the injury be accidental or wilful: and the law is the same when suit is brought against the servant himself, for an act done by him. A master is not liable, either in trespass or in case, for the wilful act of his servant, as by driving his master's carriage against another without his direction or assent. But he is liable to answer for any damage arising to another, from the negligence or unskilfulness of his servant acting in his employ. But in what form of action is he liable? And the authorities are uniform, that case, and not trespass, is the proper remedy. When a servant is in point of law a trespassor, the master is not chargeable as such, though liable to make compensation for the damage consequential from his employing an unskilful or negligent servant. The employment of the servant, it is true, is the act of the master, but from that no immediate prejudice arises to those who may suffer from his subsequent acts. It is accordingly held, that case, and not trespass, was the proper remedy, for an injury done to the plaintiff's chaise, by the servant of the defendant so negligently driving his carriage that it struck against the plaintiff's chaise, and broke it. The Court said, in *Morley* v. *Gainsford*, (2 *H. Bl.* 442,) that it was difficult to put a case where the master could be considered as a trespasser, for an act of his servant, which was not done at his command. But in the case at bar, it *is* not pretended that the act was done at the command of the corporation, nor is there the slightest evidence from which their assent can be implied. If, therefore, the defendants, under the circumstances of the case, are liable, it is very clear that it is not in this form of suit, but in action on the case, for the unskilfulness or negligence of the engineer, who, at the time the injury was done, was acting as the servant of the company.

Judgment reversed.